[Crim. No. 188.   Fifth Dist.   Mar. 8, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN CALVIN MARTIN et al., Defendants and Appellants.

Dennis M. Sullivan, under appointment by the District Court of Appeal, and Goldberg, Noriega & Sullivan, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Ronald W. Tochterman, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—The primary thrust of this appeal is that the convictions of both appellants for burglary resulted from the erroneous admission of the confession made by appellant Martin. Appellants contend Martin's confession was the product of his illegal arrest.

On January 6, 1965, a person whose identity was not disclosed, told Kern County Deputy Sheriff Clendenen that appellant Martin had offered to sell him some of the loot taken in an unsolved burglary that occurred December 27, 1964.

Although Clendenen identified the person as a "confidential informer," he admitted that the person had never before given him information. He and another officer went looking for Martin, found him and told him he was under arrest for burglary, and took him to the sheriff's substation.

Since the officers had no warrant, the arrest was clearly illegal, and respondent does not contend otherwise. At headquarters Officer Clendenen interrogated Martin, but before doing so advised him of his right to an attorney and his right to remain silent. It is not clear as to who was present at the questioning other than Officer Clendenen, to whom the informer had talked. At first Martin denied all knowledge of the crime. About one hour after the interrogation commenced Martin made an admission, and thereafter made a full confession in which he implicated appellant Garrett.

During the early morning hours of January 5, the day before his arrest, Martin suffered back pains so severe that he went to the county hospital. He was given medicine to relieve the pain, and told to return later that morning for an examination. Following the examination he was given a prescription for "pain pills" and told to get them at the county hospital pharmacy. Because it was then late afternoon, he was unable to have the prescription filled, nor had he done so by the time of his arrest the following day. According to Officer Clendenen, Martin was evidently in pain during the interrogation. He offered to let Martin use his soft chair, but Martin declined. However, Clendenen contradicted Martin's testimony that the officer refused him his pain pills unless he confessed, as well as the charge that the officer threatened to involve Martin's wife and take his children to juvenile hall.

At the time of Martin's arrest, appellant Garrett was already in jail on another charge, and after Martin confessed the officers questioned Garrett about the burglary. He denied any knowledge of it until he heard Martin's recorded confession implicating him. Shortly thereafter Garrett, too, confessed.

The trial court held the arrest made without a warrant was illegal, but admitted the subsequent confession which the court found to have been voluntarily made. For reasons stated below, we believe the result is correct but that the rationale of *People* v. *Freeland,* 218 Cal.App.2d 199 [32 Cal.Rptr. 132], upon which the trial court relied and upon which respondent relies, must be considered in the light of a later Supreme Court case, *People* v. *Bilderbach,* 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921]. *Freeland,* resting heavily on *Rogers* v. *Superior*

*Court,* 46 Cal.2d 3 [291 P.2d 929], holds, at page 203, that the federal *McNabb-Mallory* exclusionary rule based on illegal arrest is not a due process requirement and does not govern admissibility of confessions in state criminal prosecutions.

■ As we read *Bilderbach,* verbal statements as well as physical evidence that emanate from an illegal arrest, come within the "fruit of the poisonous tree" doctrine of *Wong Sun* v. *United States,* 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441], and this quite aside from the *McNabb-Mallory* rule. Although in a footnote (p. 767) the court says "We do not pass on any question involving the admissibility of statements given by an accused after he has been illegally arrested," the following language appears at pages 766-767 of the opinion: "We do not read *Wong Sun's* application of the 'fruits' doctrine to verbal statements as pertinent only in the presence of 'oppressive circumstances' (371 U.S. at p. 486, fn. 12); the rationale of the Supreme Court's opinion in *Wong Sun* forecloses such an interpretation. The court reasoned that the admission of statements induced by illegal police action would undercut the policies of the exclusionary rule (371 U.S. at p. 486). . . .

". . . Moreover, the court in *Wong Sun,* after pointing out that the 'broad exclusionary rule' extends to indirect as well as to direct products of illegal invasions, states that no distinction may be made in this regard between physical and verbal evidence. (371 U.S. at pp. 485-486.)"

Thus, to the extent *Freeland* implies that "absence of coercion and inducement continues to be the sole criterion of confession admissibility in California criminal prosecutions" (p. 203), it must be modified to meet the "tainted fruit" test approved in *Bilderbach.* ■ Nevertheless, the test of voluntariness applied in *Freeland* remains a practical means for determining whether the connection between an illegal arrest and a confession has become so attenuated as to dissipate the taint or to overcome the "reach of the fruits doctrine." In *Freeland* it is said, at page 204: "If the individual confesses his offense because he wills to confess, his statement is the product of his own choice, not that of the illegal restraint."

■ Applying this yardstick, we conclude that the trial court correctly admitted Martin's confession in evidence.

Since in this case the same result is reached under the rationale of either *Freeland* or *Bilderbach,* it might appear that there is no practical distinction between them. This is not the case, however, for under *Freeland,* as we interpret it, had Martin confessed spontaneously at the time of his illegal

arrest, the confession would be admissible because it would not have been elicited by the arresting officers, nor the result of their interrogation. Under *Bilderbach,* on the other hand, because there would be no attenuation of the taint of illegal arrest, such spontaneous confession would be the direct product thereof, and inadmissible. The note at the end of the *Bilderbach* opinion, page 768, graphically illustrates the example we have drawn: " 'In the *Wong Sun* case the statements of Toy made simultaneously with the illegal arrest and the unsigned confession of Wong Sun made several days thereafter are at the opposite ends of the pole in considering the fruit of the poisonous tree. Between these two extremes there is a line, on one side of which the fruit is contaminated by the illegal arrest, and on the other side of which the taint has been dissipated. *Where this line shall be drawn is a question of fact to be determined in each case.' (United States* v. *McGavic* (1964) 337 F.2d 317, 319; . . .)'' (Italics added.)

Although in the example we used above the illegal arrest and the spontaneous confession are concurring events, we hasten to add that our interpretation of ''attenuated'' does not rest on whether there is a time interval between the illegal arrest and the confession. Attenuation is brought about by intervening factors that abate or minimize the illegal arrest as the cause of the confession. In a particular case time may or may not be one of the factors bearing on the issue; it could be the determining factor.

In the instant case, intervening events dissipated the taint of the illegal arrest. Martin made no confession at the time of his arrest nor on the trip to the sheriff's office. At headquarters he was advised of his constitutional rights (*Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *People* v. *Stockman,* 63 Cal.2d 494 [47 Cal.Rptr. 365, 407 P.2d 277]), which he effectively, knowingly and intelligently waived. (*In re Johnson,* 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420].) When he thereafter discussed the crime with the officers, he knew he had the right to remain silent and the right to aid of counsel. Yet he chose to confess. In view of these developments manifesting voluntariness, the illegal arrest was attenuated sufficiently to support the trial court's finding that the confession was voluntary, and admissible.

█ It follows that we find untenable appellant Martin's argument that his confession was involuntary under the rationale of *Escobedo* and *Dorado.* Martin contended the

658

police officer refused him his pain pills unless he confessed, but the trial judge found against him on this issue, just as it found against him on his charge that the officer threatened to implicate his wife and take his children to juvenile hall. Since substantial evidence supports the findings of the trial court on these issues, we will not overturn them. (*People* v. *Bilderbach,* at pp. 762-763.)

■ Appellants also contend the stolen goods were located by the officers as the result of Martin's confession which was illegally obtained. This in turn, it is argued, rendered the physical evidence, the fruit of the illegal confession, inadmissible under *Wong Sun* and *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385 [40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426]. Our conclusion that Martin's confession was admissible renders untenable the argument that the physical evidence secured later as a result of the confession was inadmissible.

■ The same reasoning applies to appellant Garrett's argument that his confession was inadmissible since he was induced to confess after hearing a play-back of Martin's confession involving him in the crime. None of the practices held to be intolerable in *Massiah* v. *United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], or *In re Lopez,* 62 Cal.2d 368 [42 Cal. Rptr. 188, 398 P.2d 380], occurred here. Garrett was not deceived as to what he was hearing nor as to whom he was talking. The admissibility of Martin's confession answers Garrett's argument that his confession was inadmissible because it stemmed from Martin's confession.

The judgment is affirmed.

Conley, P. J., concurred.