72 Cal.Rptr. 171]

[Civ. No. 24786.   First Dist., Div. Four.   Sept. 24, 1968.]

In re GEORGE H. RAMBEAU, a Person Coming Under the Juvenile Court Law.

LORENZO BUCKLEY, as Chief Probation Officer, etc., Plaintiff and Respondent v. GEORGE H. RAMBEAU, Defendant and Appellant.

(1)

John D. Nunes, Public Defender, and D. Richard Barelli, Assistant Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, P. J.—We have here an appeal from an order which declares a 17-year-old boy to be a ward of the juvenile court upon a finding that he is in danger of leading a dissolute life, because he purchased, possessed and smoked marijuana.[1] The court's order is mild. It decrees that the boy is to remain in his father's home, subject to supervision by the probation officer, and that he refrain from associating with persons who use or possess marijuana. Perhaps the order in itself is all for the best. Nevertheless, it adjudges appellant guilty of a felony offense. The procedures which led to it are in question.

### The Arrest

On February 6, 1967, at about noon, George Henry Rambeau, who was then nearly 17 years old, and his younger sister were at home. Their mother had left the home some 13 years before and had remarried. The father, who is referred to in generally complimentary terms in the probation report (although his disciplinary attitude was said to be too lax), took care of them. Police officers arrived, entered the home (it is disputed whether the sister invited them in), arrested the boy and brought him to the police station. A girl who was in the house was brought to school. An officer asked if the father were at home. He was informed that he was at work. No further reference to the parent was made by the police or the boy during the interrogation which followed.

The officers did not have a warrant for the boy's arrest. The information which the arresting officers had about appellant was described by one officer, in answer to the court's question, thus: ''Your honor, we had a conference at the office of the Juvenile Division, in which there were many names plastered on the wall, on cards, and it would indicate how many times various people would mention a certain name, and then the lieutenant would pass this out to the various teams and we would go out and pick these youngsters

---

[1]The findings in the order of supervision are defective in form because the line on which the essential findings were to be entered is left blank. The order, however, taken together with the petition, which is found to be true, is sufficient. No point of the defect is made by appellant.

up and bring them in and question them.'' The vague information which led to the listing and later to arrest appears to be merely reports from other people generally, who were not identified (at least, for the record). To the question whether it was from ''reliable professional informers,'' an officer answered ''No.''

Respondent's brief says: ''The present incident arose out of an investigation by the Oakland Police Department into marijuana traffic. Several of the minors interrogated mentioned appellant as a person whom they knew to have smoked marijuana. The independent statement of each juvenile corroborated significant portions of the statements made by the others.'' Respondent's explanation for adding this to the quoted testimony of the police officer is that it appears in the report of the probation officer, and that this report was admitted in evidence.

But the probation officer's report cannot be taken as justification for the arrest. There is nothing in the testimony of the arresting officer to show that the arresting officers were aware of what is contained in the report when the arrest was made. In fact, the ''several statements'' that appellant had smoked marijuana may have been made after his arrest, by other arrested minors, or by other persons. The legality of an arrest must be measured by the information possessed by the arresting officer at the time of the arrest, and not by the total information gained later. (*People* v. *Gallegos,* 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174].)

Besides, we do not regard the admission of the probation officer's report as having bearing on the adjudicatory as distinguished from the dispositional function of the judge. We shall not decide the question raised by appellant, whether the report *could be* admitted in support of the petition for wardship in a case wherein the basis for the petition is an alleged substantial criminal offense, as distinguished from such matters as truancy, disobedience of teachers, and so forth. It is enough to say that in our view the judge did not admit the report as an element of the case except to help him in his control following adjudication of wardship, because:

1. The judge announced to the boy's father, at the outset: ''If I find that the charges are not true, the petition will be dismissed and that is the end of it. If, however, I find that the charges are true, *then,* before I decide what to do about the case, I will give consideration to the report and the recom-

mendations that the Probation Department has filed in the case'' (italics supplied).

2. No reference was made to the report during the hearing, although the report, if admitted for all purposes, undoubtedly would have been the subject of interrogation and of challenge by counsel for appellant.

We conclude that the arrest was based on no more than the ''plastering'' of appellant's name on the board at police headquarters following his being named in some undescribed way. The illegality of the detention does not render any confession obtained during the detention ipso facto inadmissible. (*People* v. *Powell,* 67 Cal.2d 32, 59-60 [59 Cal.Rptr. 817, 429 P.2d 137].) But if, by reason of the illegal detention, appellant was deprived of a fair trial or otherwise suffered prejudice, there will be a reversal. (*People* v. *Powell, supra,* p. 60; *People* v. *Combes,* 56 Cal.2d 135, 142 [14 Cal.Rptr. 4, 363 P.2d 4].) We must decide whether the connection between the illegal detention and the confession referred to below has become so attenuated as to overcome the ''fruits of the poisonous tree'' doctrine. (*People* v. *Martin,* 240 Cal.App.2d 653, 656 [49 Cal.Rptr. 888].)

### *Interrogation*

The right of a minor to be protected against self-incrimination is undoubted. (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].) It is admitted by appellant that the *Miranda* warning was given. Appellant testified that an officer told him that ''things would go a lot easier for me if I gave a statement, and I asked if I could go home the same day and he said he didn't know.'' The officer denied that he said it would be better for the boy if he made a statement, and said that the boy did not ask when he would be released.

The trial judge having found that appellant's statement was voluntary, we shall consider that the factual dispute was resolved in favor of respondent. Thus, there cannot be a reversal on *Escobedo-Dorado-Miranda* grounds. But compliance with the requirement of warning contained in the cited trilogy of decisions is not enough to settle the matter, at least in a case involving a minor. It was said in *In re Gault, supra*: ''The privilege against self-incrimination is, of course, related to the question of the safeguards necessary to assure that admissions or confessions are reasonably trustworthy, that they are not the mere fruits of fear or coercion, but are reli-

able expressions of the truth. The roots of the privilege, are, however, far deeper. They tap the basic stream of religious and political principle because the privilege reflects the limits of the individual's attornment to the State and—in a philosophical sense—insists upon the equality of the individual and the State. In other words, the privilege has a broader and deeper thrust than the rule which prevents the use of confessions which are the product of coercion because coercion is thought to carry with it the danger of unreliability. One of its purposes is to prevent the State, whether by force or by psychological domination, from overcoming the mind and will of the person under investigation and depriving him of the freedom to decide whether to assist the State in securing his conviction.'' (387 U.S. at p. 47 [18 L.Ed.2d at p. 557].)

■ We shall state at this time the nature of the confession which was obtained, and then we shall examine the circumstances which led to it. The boy signed a statement written by an officer as given by appellant, in which he admitted: (1) That he had smoked a marijuana cigarette about a year before; (2) that from September 1966 to January 1967 he bought five or six match boxes of marijuana from a boy whom he named; (3) that he had smoked all of this himself (and had sold none of it); (4) that about a month before the interrogation he had smoked a marijuana cigarette with his sister and her girl friend.

As in the case of *In re Gault,* the confession was the sole basis of the court's finding. No witness appeared to testify about the essential facts.

The following circumstances lead us to the decision that the confession, made during the illegal detention, cannot be separated from the unlawfulness of the detention:

1. No attempt to contact the boy's father was made. If the officers, before commencing their interrogation, had sought information from the juvenile probation officer, they would have ascertained that appellant's father, in connection with earlier affairs of minor misconduct, had consulted the juvenile court authorities.

2. Section 625 of the Welfare and Institutions Code allows an officer to take into temporary custody, without a warrant, a minor who is under the age of 18 years, when such person is in danger of leading an idle, dissolute, lewd or immoral life. But when the officer does this, he must, unless he releases the minor as described in that section, take the minor without unnecessary delay before the probation officer. The officers did not do this, but proceeded to examine the minor themselves. It

may be that the officers considered that they had made the arrest not under the provisions of section 625, but as an ordinary arrest for the commission of a crime. But if this were so, it is questionable whether proceedings later could be taken under section 601 of the Welfare and Institutions Code, a matter considered more fully below.

It is doubtful that there may be a shuttling between the civil process described in section 601 (whereby use of the confession alone, without proof of the corpus delicti, was allowed) and the semi-criminal procedure of ordinary arrest and interrogation by the police before delivery of the minor to the probation officer. This is another consideration to be regarded among the totality of circumstances.

3. The generality of the questioning, as it appears in the record, is offensive in its invitation to a confession of guilt of whatever sort. An officer testified, when asked whether the statement was in response to questions: ''Well, I told him, in his own words, to give me what he was involved in and he would tell me and I would write it down as close as possible.'' This is dangerously close to the classic demand attributed to the police in totalitarian countries: ''Tell us what you are guilty of.''

Now, it may be that the boy's attention was called to specific accusations or instances, but this does not appear from the record. What does appear is the following:

''Q. Now, you told him that there were about seven or eight other people that had given him his name in connection with marijuana?

''A. I may have, I don't recall.

''Q. Well, didn't he ask you 'Why am I down here?'

''A. He may have, I don't recall that.

''Q. Then, you must have told him then that a couple of other people had given his name?

''A. He [sic] may have, I don't recall''; and

''Q. Then the only reason that you gave him for being taken into custody was that he was—his name had been mentioned by a few people, is that correct?

''A. I believe that his name was mentioned.

''Q. Well, did you give him any other reason for his arrest and being taken down to the jail and put in the interrogation room?

''A. No.''

The officer also made a vague reference to ''various questions.'' Apparently, in the questioning some reference was

made to the name of the boy who sold the marijuana. All in all, it appears that the officers proceeded to establish appellant's guilt of possession of marijuana, a felony offense (Health & Saf. Code, § 11530), entirely from the boy's own statement. The *Miranda* warning is not sufficient to justify the kind of interrogation which was undertaken, the interrogation having been the sequel to an illegal arrest.

In *People* v. *Lara,* 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202], cited by respondent, the boy was over 18 years of age; the arrest was perfectly legal because the police had a good deal of information about the commission of the crime; the corpus delicti was independently proved; and the defendant had attempted to bargain with the police before making his statement.

### *Proceedings Under Section 601 of the Welfare and Institutions Code*

The proceedings were taken under section 601 of the Welfare and Institutions Code, rather than section 602, despite appellant's insistence during the hearing that he was entitled to have the case heard under the latter section. ■ The difference is this: Under section 602 a person under the age of twenty-one, who violates any law of this state, may be adjudged a ward of the court. But the finding of violation can be made only upon the preponderance of evidence legally admissible in the trial of *criminal* cases. (Welf. & Inst. Code, § 701.) Thus, a confession illegally obtained cannot be relied upon to support a finding that a minor committed a crime. (*In re Buros,* 249 Cal.App.2d 55, 57 [57 Cal.Rptr. 124].) In a proceeding under section 601, however, a preponderance of evidence legally admissible in the trial of *civil* cases is sufficient. (Welf. & Inst. Code, § 701.)

Thus, by proceeding under section 601, the objection which readily would have been good had proceeding been under section 602, namely that there had been no independent proof of the corpus delicti, was avoided. Other objections appropriate to criminal trials might also have been raised in a 602 hearing. We need not decide the point urged by appellant, that whenever wardship depends on the proof of the commission of an offense the proceeding must, on demand of the minor, be carried on under section 602 rather than under section 601, which allows wardship if the minor is from any cause in danger of leading an idle, dissolute, lewd or immoral life. ■ It is enough to say that the privilege against self-incrimination is a fundamental right of due process, and a

statement taken in violation of that right is inadmissible even though the proceeding be a civil one. (*In re Gault, supra,* 387 U.S. 1.) To what extent a self-accusatory statement may be admissible in juvenile court proceedings, wherein mere misconduct or even minor offenses against the law are involved, we need not decide. Where the essential finding of the court is that a felony, or felony offense as described in section 11914 of the Health and Safety Code, has been committed, the juvenile is protected against the sort of combination of illegal detention with invitation to a general confession that appears in this case.

The order appealed from is reversed.

Rattigan, J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 20, 1968. Peters, J., was of the opinion that the petition should be granted.