[Civ. No. 9586. Fourth Dist., Div. One. July 11, 1969.]

In re DANIEL R., a Person Coming Under the Juvenile Court Law.

MARGARET GRIER, as Probation Officer, etc., Plaintiff and Respondent, v. DANIEL R., Defendant and Appellant.

Frank L. Williams, Jr., Public Defender, and Francis J. Moran, Deputy Public Defender, for Defendant and Appellant.

Cecil Hicks, District Attorney, Oretta D. Sears and Michael R. Capizzi, Deputy District Attorneys, for Plaintiff and Respondent.

WHELAN, J.—Daniel R. (the minor) 16 years old, appeals from orders of the Orange County juvenile court made November 5 and 20, 1968.

The jurisdictional finding is embodied in the order made on November 5, 1968, which found true beyond a reasonable doubt the allegations of the petition. The dispositional order made November 20 committed the minor to the Orange Juvenile Home for 60 days. The commitment was stayed pending appeal.

By stipulation made at the time of oral argument, we have been furnished with a copy of the petition whose allegations

were found to be true. It alleges the minor: ". . . is in danger of leading a dissolute life, in that he admitted selling 7 'lids' of marijuana on the campus of the Costa Mesa High School on September 20th, 1968, further, he admitted that he has sold marijuana on numerous other occasions."

## THE TESTIMONY

At about 1:30 p.m. on September 20, 1968, an informer ran into the office of William Vaughn, the vice principal at Costa Mesa High School. The informer-student stated that the minor had sold marijuana on the campus during the noon recess. The informer seemed excited and concerned. He told Vaughn he had worked the previous year with Detective Carter in narcotics. Vaughn, being a new administrator at the school, had never seen the informer before, although he later determined that the previous vice principal knew the informer personally and had "worked with him" the previous year.

The minor was then brought into the office of the assistant principal, Donald Achziger. In the presence of Vaughn and Achziger, the minor was questioned in regard to the charge by the informer. He was told to put the contents of his pockets on the table, which he did, laying out $42 cash. The minor stated that he had been collecting debts. Immediately thereafter the minor's mother was called to the school. She arrived in about 20 minutes from the time the boy emptied his pockets. Two police officers arrived about 20 minutes after the minor was brought to the assistant principal's office.

Vaughn told the officers the name of his informant and that he had worked with Detective Carter on prior cases the preceding school year.

The mother was surprised at the amount of money in her son's possession and stated he shouldn't have that much and she didn't know where he got it from. She expressed herself as wishing to do anything possible to clear up the matter. Both she and the minor agreed that he should take a polygraph test.

The minor and his mother were taken to the Costa Mesa police station. At the station Wilkinson, a detective in the Costa Mesa Police Department's juvenile division, made arrangements for a lie detector test in charge of a lieutenant who was not available at the moment.

Wilkinson knew of the informer by name but had no personal knowledge of the boy's connection with the police. He knew that Carter worked on a narcotics team.

The minor was taken to an interrogation room by Officer Wilkinson who advised him of the rights articulated in *Miranda* v. *Arizona* by reading from a printed form. The minor stated he understood his rights and when asked if he were willing to talk to Wilkinson about the charges against him he replied in the affirmative. Wilkinson questioned him about the source of the money and the minor stated that he was collecting debts. He was unable to tell Wilkinson from whom he had received any of the money, or how much he had collected from any one person at the school. After a few more minutes of questioning, Wilkinson, who knew the minor had not been asked to remove his shoes while at school, asked him if he would take off his shoes. The minor said he would, did so, and poured onto the table from one of his boots an additional $26. At about that time he said he had sold seven lids of marijuana on campus that day. He said he received $10 for six lids and $8 for one lid and had sold marijuana on campus on prior occasions that school year and the one before. A lid was defined by Wilkinson as a plastic baggie containing marijuana. The minor testified as to the circumstances under which he had made the statement concerning sales of marijuana. He testified categorically that the reason he had made the statement was not because he had produced the money from his boot; and he was not sure he made his statement before or after he had poured the money out of his boot.

It was his claim that he had made the statement because the police had said it would not go so hard on him if he told the truth. Wilkinson denied having made any such promise.

The minor raises three issues on appeal.

 *Is the language of section 601, Welfare and Institutions Code, unconstitutionally vague and indefinite?*

We think not.

The question as to the sufficiency of such language has most often come up in criminal prosecutions of those charged with contributing to the delinquency of minors.

In *People* v. *Deibert,* 117 Cal.App.2d 410 [256 P.2d 355], the court dealt with former section 702, Welfare and Institutions Code. By the provisions of that section, any act or omission which "tends to cause or encourage" a minor to become a delinquent was made a crime. A case was established when the evidence proved acts or omissions tending to cause or encourage the minors to lead "an idle, dissolute, lewd, or immoral life."

The court held that the words "dissolute and immoral"

met constitutional standards of certainty and definiteness. (*People* v. *Calkins,* 48 Cal.App.2d 33, 35 [119 P.2d 142]; *People* v. *Cohen,* 62 Cal.App. 521, 526 [217 P. 78]; *People* v. *Kinser,* 99 Cal.App. 778, 782 [279 P. 488]; see also *People* v. *Mitchell,* 148 Cal.App.2d 733 [307 P.2d 411]; *People* v. *Reznick,* 75 Cal.App.2d 832 [171 P.2d 952]; *People* v. *McDougal,* 74 Cal.App. 666 [241 P. 598].)

Language sufficiently definite to support conviction of a crime that has been punishable by confinement for a period of two years is sufficient to define a condition that will subject a minor to the jurisdiction of the juvenile court.

It is reasonable that there be some method by which a juvenile may be made a ward of the court other than in a dependency situation (Welf. & Inst. Code, § 600) or when the commission of a crime can be proved (Welf. & Inst. Code, § 602). The language found in section 601 is no less satisfactory than "growing up in crime," which is used in the statutes of several states. *People* v. *Deiberg, supra,* 117 Cal.App.2d 410, 418, states:

" 'Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible.' (*People* v. *Kennedy,* 21 Cal. App.2d 185, 193 [69 P.2d 224].) The use of words of general meaning is the essence of our code system. Thus, in a sphere so vital to the community as the welfare of its youth, the words used in a statute designed to enable the Legislature to come to grips effectively with the problems of juvenile delinquency should be upheld where their frequent use in penal statutes gives assurance that they are understood by men of ordinary intelligence."

### Admissibility of Minor's Statements

We find no difficulty in supporting the ruling of the juvenile court on the admissibility of the minor's statements. We do so without touching upon the questions whether there was probable cause for arrest before the boy removed his shoes, and whether the removal by him of his shoes constituted a search.

The minor here was subject to the discipline of his parents. His mother was present at the school where the police questioning of her son commenced, although without a *Miranda* warning. She expressed herself as willing to have everything necessary done to clear up the question of her son's involvement; she accompanied him to the police station for the pur-

pose of further interrogation in a polygraph examination.[1] The minor himself expressed his willingness, after receiving the *Miranda* advices, to be questioned. It cannot be said in those circumstances that the questioning and the information obtained thereby were the result of an illegal detention.

The minor testified that the reason for giving his statement was not the production of the money from his shoe, which, after all, was only an addition to a sum of money he was unable to account for reasonably. It would be farfetched to rule as a matter of law that his admissions were hinged upon an impermissible request to remove his shoes.

## THE FIFTH AMENDMENT QUESTION

■ Two different questions are involved in the fact that the petition to have the minor declared a ward of the juvenile court was brought under section 601, Welfare and Institutions Code.

That petition in effect alleges that the minor made sales of marijuana. In express terms it stated: '' [H]e is in danger of leading a dissolute life, in that he admitted'' such sales. Surely that is intended to imply he made such sales, as he himself has admitted. The making of such admission, if false, would make him guilty of a lie, but that single lie alone would not support the claim he was in danger of leading a dissolute life.

We fully agree that a boy of 16 years who has sold marijuana on even one occasion is thereby in danger of leading a dissolute life. If such a practice or the making of a single sale were the basis of a petition under section 601 rather than 602, that fact alone should give no cause for complaint by the minor, but is favorable to him rather than otherwise.[2]

Where, however, the proof of the allegation rests solely upon the admissions of the minor, a different element enters. In that case, the minor may rightly contend that proof of such allegations of the commission of a felony must be under the same standards as if the petition were under section 602, Welfare and Institutions Code.

As in *In re Rambeau,* 266 Cal.App.2d 1 [72 Cal.Rptr. 171], the order in the case at bench, taken together with the

---

[1] This is not to say the mother could waive any of her son's constitutional rights.

[2] A minor adjudged a ward of the court under section 601 may not be sent to the California Youth Authority as is possible under section 602. (§§ 730-731, Welf. & Inst. Code.)

petition, finds the minor to have done acts that are defined as felonies.

Apart from the hearsay testimony of the unnamed boy who gave the information to Vaughn, the sole evidence there was any sale of marijuana comes from the extrajudicial admissions of the minor. We disregard the hearsay, because it seems to have been introduced only for the purpose of showing probable cause for arrest.

Thus the only evidence that any sale of marijuana had been made by the minor was his own extrajudicial admission. For that reason, the orders appealed from must be reversed, notwithstanding the fact that the minor undoubtedly is in need of the supervision of the juvenile court.[3]

The orders appealed from are reversed.

Coughlin, Acting P. J., and Ault, J. pro tem.,* concurred.

---

[3]The evidence would support findings that the minor had in his possession a substantial sum of money the acquisition of which by honest means he was unable to account for; and that he associated with persons engaged in the narcotics traffic, which latter fact, not being an act defined as a felony, might be shown by his admissions.

*Assigned by the Chairman of the Judicial Council.