STATE, Respondent, v. LOEFFLER, Appellant. [Case No. State 89.]

STATE, Respondent, v. SPAH, Appellant. [Case No. State 90.]

*Submitted under sec. (Rule) 251.54 September 11, 1973.—Decided October 15, 1973.*

(Also reported in 211 N. W. 2d 1.)

For the appellants the cause was submitted on the briefs of *Doyle, Woodmansee & Asfoor, Ltd.*, and *Patrick R. Doyle,* all of La Crosse.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Marvin I. Strawn,* assistant attorney general.

BEILFUSS, J. The defendants' contention is that it was prejudicial error not to suppress their confessions given shortly after an illegal arrest and that without the confessions the evidence was wholly inadequate to sustain the convictions.

Prior to trial the defendants moved to suppress the confessions upon the grounds the arrests were illegal and that the confessions taken about an hour thereafter were tainted by and a result of the illegal arrests and therefore they should be excluded from the evidence. The trial court heard the motion in a *Goodchild-Miranda*-type [1] hearing and concluded that the arrests were illegal but that the arrests did not taint or affect the confessions; and, further, that the confessions were voluntary under the *Goodchild-Miranda* standards.

[1] *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753, certiorari denied, 384 U. S. 1017, 86 Sup. Ct. 1941, 16 L. Ed. 2d 1039; *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

The state contends the arrests were based upon probable cause and not illegal. We will, for the purposes of this opinion, assume but not decide that the arrests were illegal.

The facts necessary for the opinion as they appear in the record are as follows:

At about 3 a. m., on the morning of March 30, 1971, the La Crosse police received a call from a resident of an apartment located at 622 South 7th Street. He told the police he believed that the apartment adjacent to his had been burglarized because furniture had been removed and placed in a station wagon which drove off. He did not know the individuals involved but was able to give an accurate description of the vehicle. A La Crosse policeman, Patrolman Jeffrey Osterhout, was in that area of the city and after hearing the police radio bulletin he cruised the area in search of the described vehicle. He located a vehicle that answered the description and arrested the driver, Donald Wagner, upon a charge of driving after revocation of his driver's license.

At the police station Wagner admitted participating in the burglary of the furniture. He stated that he left the furniture and two other individuals involved with him in the burglary at two residences on the north side of the city. He could not give the addresses of the two residences nor the names of the other two individuals except that one was called Ted. He did, however, accompany the officers to the north side and pointed out the residences; the officers thereby learned the addresses. A check of the city directory revealed that a family by the name of Loeffler lived in one and a family named Spah in the other.

Later that morning the officers contacted Mrs. Harding, who owned the apartment building but did not live there. The officers and Mrs. Harding went to the apartment building. The apartment in question was vacant but ready for rental as a furnished apartment. When

they arrived the door was ajar. Mrs. Harding reported several items of furniture were missing and listed them.

The officers then went to the two residences with Mrs. Harding. They first went to the Spah residence where they saw some furniture in the yard which was identified by Mrs. Harding as furniture missing from the apartment. The Spah house had an enclosed porch which the officers and Mrs. Harding entered. In the porch they saw a lamp and mattress which Mrs. Harding claimed. By looking through the kitchen window they saw bed ends leaning against a kitchen cabinet. The defendant Richard Spah answered a knock on the kitchen door. There was no identification of him nor inquiry as to who he was. He was immediately arrested for receiving stolen property and taken to the police station.

The police and Mrs. Harding then went to the Loeffler residence which also had an enclosed porch. They entered the porch and knocked on the kitchen door. At this time they observed a plastic deerhead plaque leaning against an inside wall of the porch. Mrs. Harding identified the plaque as one taken from the apartment. Mrs. Loeffler, the mother of the defendant Loeffler, answered the door. The officers identified themselves and stated they wanted to talk to Mr. Loeffler about a burglary. Mrs. Loeffler stated she had never seen the plaque before. The defendant, who had been sleeping, got dressed and came to the kitchen and was told he was under arrest for possession of stolen property. He, too, was then taken to the police station.

Spah was arrested at 9:42 a. m., and his incriminating statement was taken at 10:20 a. m. Loeffler was arrested at 9:55 a. m., and his incriminating statement was taken at 10:25 a. m. The custody of both defendants was continuous and uninterrupted.

The defendants were not threatened, abused, promised leniency, or otherwise mistreated. They were fully advised as to their constitutional rights as required by

*Miranda* and signed a statement setting forth these rights. They were advised they had a right to remain silent, that any statement they did make could be used against them in court; that they could have a lawyer before any questions were asked and have him with them, and that if they could not afford a lawyer one would be appointed; and that if a statement was given they could stop at any point to get a lawyer. After reading and signing this waiver of their rights they both gave incriminating written statements.

Evidence obtained as a direct result of a violation of a constitutional right, here a claimed illegal arrest, is inadmissible upon proper objection. This exclusionary rule applies to statements which are a direct result of an unlawful arrest. *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441; *State v. Schneidewind* (1970), 47 Wis. 2d 110, 176 N. W. 2d 303; *State v. Williams* (1970), 47 Wis. 2d 242, 177 N. W. 2d 611. However, all of these cases, *Wong Sun, Schneidewind* and *Williams*, recognize that this rule is not absolute where the incriminating evidence has a sufficiently independent origin—where ". . . 'the connection between the arrest and the statement had "become so attenuated as to dissipate the taint." . . .' " [2]

If the statements were not a direct result of the illegal arrest and were given voluntarily after the *Miranda* warnings they are admissible.

Under the circumstances of this case we believe the statements given were not a direct result of the arrest and that intervening events and prior circumstances attenuated the illegal arrest to such an extent as to dissipate any unconstitutional taint.

The time between the arrest and the statement is, of course, an important factor but not completely controlling.[3] It is one of the circumstances to be considered.

---

[2] *State v. Williams, supra.*

[3] *People v. Martin* (1966), 240 Cal. App. 2d 653, 49 Cal. Rptr. 888.

The trial court concluded, and we agree, that the police did not conduct an illegal search and that the search did not immediately follow an illegal arrest. The fruits of burglary were seen in plain view by the police at a time and place where the police had a right to be as a part of their necessary investigative duties. The enclosed porches were part of the entry way to the door the police had to go in in order to knock. This evidence was in plain view and known to the police before, not after, the arrest of the defendants. It cannot be said there was a search and seizure of incriminating evidence as a direct result of the arrest.

The statements were given within an hour while in custody at the police station. There is no claim of any police mistreatment of the defendants nor of any improper inducements. No statement was given before the defendants were advised they did not have to make a statement and that it could be used against them, together with other *Miranda* warnings. The statements were written by the defendants in their own handwriting. Under these circumstances we believe the statements were voluntary and that the illegal arrest was so attenuated as not to have affected the will of the defendants or the voluntariness of the statements. The statements were properly admitted into evidence.

*By the Court.*—Judgments affirmed.