[Crim. No. 14158. Second Dist., Div. Five. Nov. 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD MICHAEL SHAW, Defendant and Appellant.

Jesse L. Halpern, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

DRUCKER, J. pro tem.*—Defendant was charged with the felonies of burglary and forcible rape. A public defender was appointed to represent him. He pleaded ''not guilty,'' and waived a jury trial. He was found guilty as charged, and the burglary was fixed at first degree. The court denied probation, and sentenced defendant to state prison, retaining jurisdiction and requesting diagnostic study and report under the terms of section 1168 of the Penal Code. Stay of execution was granted as to count 2 pending appeal, and at the completion of the sentence on count 1, the stay will become permanent.

Defendant appeals from the judgment of conviction and from a purported order denying a motion for new trial. However, there is no record of a motion for new trial.

Appellant, who lived directly across the street, entered the victim's locked home between 8:30 and 8:50 p.m. while she was there with her children who had recently been put to bed. She was partially disrobed. Her husband was at work at the time. She saw appellant standing in the kitchen and screamed. He leaped toward her and grabbed her by the throat. He was choking her and dragging her into the living room. She scratched him on his face with her fingernails. She was running out of air. Suddenly, he let go, threw her in a chair and started hitting her face with his closed fist. She was afraid for her life and the safety of her children. While this was going on, her head went back and broke the window behind the chair. Appellant then threw the victim to the floor, tore off her pants, pulled up her nightgown and had sexual intercourse with her against her will. When he was through he said, ''If you tell anybody about this I will kill you. I will

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

kill your kids.'' He said he had buddies outside that would be watching to see if she did tell anyone. Then he left. She went next door with the children and called the police. She turned her clothes over to the police and was given a pelvic examination by a doctor at the emergency hosptial, who took vaginal and cervical smear slides and found seromucous secretion. There was sperm on the slides. She had severe contusions, black and blue areas, blood clots, around both eyes, the left jaw and lips.

She made a report to the police and gave them a detailed description of the rapist.

Later that evening uniformed police officers in a marked radio car received a broadcast about the rape which gave the description of the subject. They saw appellant sitting in back of a taxicab about three or four blocks from the victim's home. He was stopped as a possible suspect in this crime. There were fresh blood stains on his right cheek. He was told he was being held for investigation for forcible rape. He was informed of his rights: that he could remain silent, that anything he might say could be used against him in future criminal proceedings, that he had a right to the presence of an attorney and if he could not afford one, one would be appointed for him prior to his interrogation. He was asked if he understood and he said, ''Yes.''

He was then put into the police car. He asked ''Where are you taking me?'' and was told, ''We may take you to the scene of a rape that just occurred.'' They started to drive toward the West Valley Police Station. Appellant said, ''I thought you were taking me to the rape?'' He was asked, ''What makes you think we're not?'' He replied, ''Yarmouth is back that way.'' The victim's home was on Yarmouth Street.

During the booking process appellant was asked where he got the blood stains on his cheek and he stated that he probably scratched a pimple. The officer could not see any apparent skin blemishes in that area. Appellant's clothing was examined. His shorts were stained in the crotch area. It looked like blood stains.

Appellant's palm and fingerprints were found on the outside window sill of the victim's home.

Although conceding that he was correctly advised as required by *Miranda,* appellant contends that the foregoing admission, and his confession, hereinafter stated, were improperly admitted in evidence in violation of his constitu-

tional rights as set forth in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], for the reason that there was no "expressed waiver" of said rights, and that this constituted "reversible error per se."

He says: "While it is true the appellant affirmatively acknowledged that he was aware of his rights, there is no affirmative acknowledgment of his waiver of those rights."

Appellant's contentions are not supported by the facts and circumstances of the case at bench. It is stated in *Miranda* v. *Arizona*, 384 U.S. 436, 475 [16 L.Ed.2d 694, 724, 86 S.Ct. 1602, 10 A.L.R.3d 974], that "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." Such express statement, made without compulsion, may constitute an affirmative and explicit waiver, but *Miranda* does not hold that an express waiver is the exclusive method whereby an admission or confession by an accused may be received in evidence.

As stated in *Miranda, supra,* at page 478 [16 L.Ed.2d at p. 725] : "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel but whether he can be interrogated . . . Volunteered statements of any kind are not barred by the Fifth Amendment. . . ."

*Miranda* also holds that: "The warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant." (Emphasis added.) (*Miranda* v. *Arizona, supra,* at p. 476 [16 L.Ed.2d at p. 724].)

 At the time of defendant's arrest in the evening of March 1st he was told by Officer Ulrich that he was being held for investigation for forcible rape. Then the officer advised him of his constitutional rights. The defendant, while riding in the police vehicle, spontaneously told the officers they were taking him away from the scene of the rape. Such volunteered statement is admissible in evidence.

The second statement made by the defendant was spontaneously initiated by him.

Police Officer Sellers, one of the investigating officers who had also advised appellant of his constitutional rights, testified: that on March 3d, while the defendant was being transported to court:

"The defendant asked me what would happen if he pled guilty. At that time I said to him, 'Now, wait a minute, do you realize that you don't have to tell me a thing, that you have the right to an attorney, and anything you say can be used against you in court?'

"He said, 'Yes, I do.'

"I said, 'Are you now telling me that you committed the crime of rape?'

"He smiled and said, 'Yes.'

"I said, 'Why did you go directly across the street to this woman's house, who lives there, rape her and beat her?'

"He said, 'I guess I was drunk.'

"I asked him if he had stood outside the window of her bedroom and peeked in, and he said, 'Yes.'

"I again asked him why he had beat her, and he said he didn't really recall beating her, but he said, 'I was pretty drunk.'

"That's about the extent of the conversation."

*Miranda* recognizes that a suspect may waive effectuation of his rights under his privilege against self-incrimination provided the waiver is made voluntarily, knowingly and intelligently. The requisite warning of a suspect's right under his privilege against self-incrimination is needed simply to make him aware of it, the threshold requirement for an intelligent decision as to its exercise. (10 A.L.R.3d 1061-1062.)

The defendant had been given three warnings as to his constitutional rights. On the occasion of his confession to the crimes of which he was later convicted, there was no compelling influence brought to bear upon the defendant to induce him to make the confession. He initiated the discussion, that, in spite of the warning against self-incrimination, led to incriminating statements that were truly the product of free choice. The defendant was afforded ample opportunity to exercise his constitutional rights but he chose to speak in the unfettered exercise of his own will. (*Malloy* v. *Hogan,* 378 U.S. 1, 8 [12 L.Ed.2d 653, 659, 84 S.Ct. 1489].)

Appropriate to the circumstances relating to the second statement made by the defendant in the case at bench is the

language of the court in *People* v. *Treloar,* 64 Cal.2d 141, at page 147 [49 Cal.Rptr. 100, 410 P.2d 620] : ''[T]he questioning was initiated by defendant, and the statement was volunteered in response to a neutral inquiry invited by defendant's own remarks; . . . the conduct of the police was neither intimidating nor accusatory, nor did it appear in any way designed to elicit incriminating statements; . . . defendant had virtually confessed in his earlier statements. There was thus no inquisitorial pressure, subtle or blunt, asserted against the defendant and designed 'to prove the charge against the accused out of his own mouth.' [Citation.]'' (See *People* v. *Tomita,* 260 Cal.App.2d 88, 92 [66 Cal.Rptr. 739].)

We are of the opinion that the evidence clearly demonstrates that the conduct and statements of the defendant resulted in a fully effective equivalent to an express waiver of defendant's constitutional rights, and sustains the ruling of the court in admitting the statements of the defendant into evidence.

The rule contended for by appellant ''that the introduction of a confession obtained from a defendant in violation of constitutional guarantees is prejudicial per se and requires reversal regardless of other evidence of guilt'' (*People* v. *Fioritto,* 68 Cal.2d 714, 720 [68 Cal.Rptr. 817, 441 P.2d 625]) has no application to the instant case.

We find no error in the trial court's rulings.

The judgment is affirmed. The purported appeal from the order denying the motion for new trial is dismissed.

Stephens, Acting P. J., and Aiso, J., concurred.