[Crim. No. 12804. In Bank. Mar. 3, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. HAROLD EDWARD JOHNSON, Defendant and Appellant.

Richard H. Levin, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

PETERS, J.—Defendant Harold Edward Johnson and a codefendant Howard, who has not appealed, were convicted of four counts of burglary after waiving jury trial and submitting the cause upon the transcript of the preliminary hearing. Johnson appeals from an order suspending proceedings and placing him on probation for five years.

Johnson claims on appeal that there is no evidence connecting him with the third count of burglary[1] and that his extra-judicial confession is inadmissible as a fruit of an unlawful search and arrest.

The Attorney General has conceded that there is no evidence connecting Johnson with count III. The sole issue to be decided in connection with the other counts is the admissibility of Johnson's confession.

Four residences were burglarized between June 1965 and October 1966. On October 21, 1966, Deputy Sheriff Ellson and Sergeant Anderson, without an arrest or search warrant, went to the apartment of Johnson's codefendant Bobby Roy Howard. They knocked on the door and asked for Howard. One Ciabattari answered the door; the officers asked him for identification, and if they could enter. Ciabattari refused permission and tried to shut the door while he went upstairs to get identification. He was unable to close the door because one of the officers put his foot inside. The officers entered, Ciabattari was arrested, and a television set taken in one of the burglaries was seized by the police officer.

Codefendant Howard was arrested about two hours later and taken to the sheriff's station. On the way into the sheriff's station, Howard and the police officers saw the television set taken from Howard's apartment. The set was pointed out to Howard and he was asked about it. Howard

---

[1]Count III charged burglary of the James residence on October 14, 1966. The conviction of Johnson on this count was probably unintended, since the judge at the preliminary hearing dismissed the case as to count III against him. The information, however, charged both defendants in count III, and the trial court found defendants "guilty as charged."

was warned of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].[2]

After being warned of his rights, after being shown the TV set, and after being asked about it, Howard confessed, implicating Johnson. Johnson was arrested the next day at his home and warned of his rights. Questioned about the burglaries, he at first denied any involvement. After his denial he was taken in a police car to Howard's residence. Howard, who was out on bail, was "invited" to join Deputy Sheriff Ellson, Sergeant Anderson and Johnson in the car "for a talk." Howard and Johnson were again warned of their rights. Howard repeated his confession, implicating Johnson, and Johnson then confessed.

In both the municipal and superior courts, defendant objected to the admission of his confession on the ground that it was induced by Howard's confession, which was inadmissible because the search of Howard's residence and his arrest were unlawful.

The Attorney General concedes that "in view of the present condition of the record" the search was unlawful. ■ The rule is settled that where a confession is induced by illegally seized evidence, the confession is subject to exclusion as fruit of the poisonous tree. (See, e.g., *Fahy* v. *Connecticut* (1963) 375 U.S. 85, 90-91 [11 L.Ed.2d 171, 175-176, 84 S.Ct. 229]; *Wong Sun* v. *United States* (1963) 371 U.S. 471, 485 [9 L.Ed.2d 441, 453, 83 S.Ct. 407]; *People* v. *Stoner,* 65 Cal.2d 595, 600 [55 Cal.Rptr. 897, 422 P.2d 585]; *People* v. *Bilderbach,* 62 Cal.2d 757, 767 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Faris,* 63 Cal.2d 541, 546 [47 Cal.Rptr. 370, 407 P.2d 282]; *People* v. *Dixon,* 46 Cal.2d 456, 458 [296 P.2d 557]; *People* v. *Govea,* 235 Cal.App.2d 285, 304 [45 Cal.Rptr. 253].)

The application of the fruit-of-the-poisonous-tree doctrine was restated in *Wong Sun* v. *United States, supra,* 371 U.S. 471, 485, 487-488 [9 L.Ed.2d 441, 453, 455-456, 83 S.Ct. 407]:

■ "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a result of an unlawful invasion. . . . [V]erbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest . . . is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion. . . .

---

[2]The sequence of Howard's being shown the TV set and being warned of his rights is unclear.

"[T]his is not the case envisioned by this Court where the exclusionary rule has no application because the Government learned of the evidence 'from an independent source' [citations]; nor is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint' [citations]. ▮▮▮ We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

The rule of *Wong Sun* was applied by this court in *People* v. *Bilderbach, supra,* 62 Cal.2d 757, in a situation analogous to that presented by the instant case: the defendant argued that his confession should be excluded since he confessed only because he was confronted with illegally obtained evidence. Although reversing on other grounds, we discussed defendant's contention should the issue arise on retrial:

"That the prosecutor may not profit directly or indirectly from an illegal search has been the keystone of the rule excluding illegally obtained evidence. . . .

"Even though statements are free of 'oppressive circumstances' and otherwise voluntarily rendered, they are not exempt from attack on constitutional grounds if they are the product of an illegal search [citations].

"The presence or absence of 'oppressive circumstances' is not determinative. Rather, each case should turn on the issue whether the evidence related so closely to the illegal search that the admission of such evidence 'would thwart the laudable policies underlying the exclusionary rule.' [Citations.]

"With this principle in mind, the trial court should examine the facts in order to determine if the statement was induced by the illegal search. [Citations.] If the statement was so induced it was not 'an act of free will to purge the primary taint of the unlawful invasion,' but was ' "come at by exploitation of [the] illegality" ' [citations] and is therefore excludable." (*People* v. *Bilderbach, supra,* 62 Cal.2d 757, 763, 767-768.)

After *Bilderbach, supra,* we held in *People* v. *Faris, supra,* 63 Cal.2d 541, and *People* v. *Stoner, supra,* 65 Cal.2d 595, that statements of the defendant made when confronted with or

told of illegally obtained evidence were inadmissible as the fruit of the poisonous tree. In *Faris,* the defendant returned to her apartment to find police officers conducting a search; they confronted her with the stolen property and secured the admissions which were held inadmissible as fruit of the poisonous tree. (*People* v. *Faris, supra,* 63 Cal.2d 541, 546.) In *Stoner,* the unlawful search and defendant's arrest occurred 72 hours before the confession which was held to be fruit of the poisonous tree. He had been held incommunicado and did not confess until after he was confronted with or told of the evidence unlawfully obtained. We held that under "these circumstances there was no break in the chain between the illegal search and seizure and defendant's confession. It was not 'sufficiently an act of free will to purge the primary taint.' " (*People* v. *Stoner, supra,* 65 Cal.2d 595, 599-600.)

Earlier, in *People* v. *Dixon, supra,* 46 Cal.2d 456, 458, where the defendant in testifying admitted possession of illegally seized evidence, we held that the testimony "was impelled by the erroneous admission of the illegally obtained evidence," and could not be segregated from the admission of the evidence to sustain the judgment.

Where an accused makes one confession and then testifies or upon subsequent questioning again confesses, it is presumed that the testimony or second confession is the product of the first. (*People* v. *Arnold,* 66 Cal.2d 438, 450 [58 Cal.Rptr. 115, 426 P.2d 515] [testimony]; *People* v. *Spencer,* 66 Cal.2d 158, 169 [57 Cal.Rptr. 163, 424 P.2d 715] [same]; *People* v. *Brommel,* 56 Cal.2d 629, 634 [15 Cal.Rptr. 909, 364 P.2d 845] [subsequent confession].) In *Spencer* it was stated: " 'We recognize that no court has ever "gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." [Citation.] Nonetheless, the courts have not been blind to the fact that "after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good." [Citation.] In this sense, a later confession may always be viewed in part as fruit of the first. [Citation.] . . . [H]uman nature being what it is, we must recognize a presumption that one is the fruit of the other.' [Citations.] " (66 Cal.2d at pp. 167-168.) Based on this reasoning *Spencer* concluded that the prosecution has the

burden of showing a break in the causative chain, and, in the absence of any such showing, a judicial confession should be excluded which emanated from the erroneous admission of an extrajudicial confession. (66 Cal.2d at p. 168.)

Although in *Spencer* the original statement of guilt was not obtained by confronting the defendant with unlawfully seized evidence but was secured without compliance with *Dorado*, the same principles are applicable where the statement is obtained immediately after such confrontation. In *Fahy* v. *Connecticut, supra,* 375 U.S. 85, 91 [11 L.Ed.2d 171, 175, 84 S.Ct. 229], the court applied similar principles where the defendants confessed after confrontation with unlawfully seized evidence and subsequently made judicial admissions. In determining the issue of causation, the important factor is that the cat is out of the bag not the manner in which the cat has been let out. ▮ Obviously, the purpose of the exclusionary rule—to deter unlawful police conduct—is as applicable to a defendant's second confession as much as to his first, where the first was obtained as a result of an unlawful search and the second induced by the first.

▮ Where a defendant's confession is secured by exploiting the use of a codefendant's confession which was the product of an unlawful search and seizure, the defendant's confession, depending upon the circumstances, may also be fruit of the poisonous tree. The ultimate question is whether the evidence has been come at by exploitation of the illegality "or instead by means sufficiently distinguishable to be purged of the primary taint." (*Wong Sun* v. *United States, supra,* 371 U.S. 471, 485, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407].) We must still determine whether admission of the evidence will frustrate the policy considerations underlying the exclusionary rule, and whether the government secured the defendant's confession from an independent source, or by means which have become so attenuated as to dissipate the taint, or by exploitation of the primary illegality.

In considering whether acts occurring between the unlawful activity and the securing of the evidence objected to are sufficient to purge the taint, courts have held that the decisive issue is not that the road from the unlawful search to the testimony is "long," but that it is "straight." (*United States* v. *Tane* (2d Cir. 1964) 329 F.2d 848, 853; *Williams* v. *United States* (5th Cir. 1967) 382 F.2d 48, 51; *Smith* v. *United States* (D.C. Cir. 1965) 344 F.2d 545, 547 [120 App. D.C. 160].)

We do not suggest that evidence should be inadmissible merely because ''but for'' the unlawful act the evidence objected to would not have been obtained. Nor do we suggest that the mere occurrence of an unlawful act determines the lawfulness of other evidence related to the unlawful act.

However, where the acts intervening between the defendant's confession and the unlawful search have in fact been induced by the authorities' exploitation of the unlawful search, and where the confession was in fact induced by the authorities' exploitation of those intervening acts, the road from the unlawful search to the confession, even if long, is straight, and adherence to the laudable policies underlying the exclusionary rule requires a conclusion that the confession is the fruit of the unlawful search. To hold otherwise would permit the authorities to profit from their unlawful activity and furnish an incentive for unlawful searches in violation of the Fourth and Fourteenth Amendments in the hope that the direct fruits of the search might be manipulated in such a way as to produce admissible evidence. (Cf. *People* v. *Moore,* 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800].)

The Attorney General has conceded that the search of Howard's apartment was unlawful. Howard's confessions, which were intervening acts between the unlawful search and Johnson's confession, were in fact induced by the authorities' exploitation of the unlawful search. Howard's first confession was secured only after confrontation with the illegally obtained evidence, and under *People* v. *Stoner, supra,* 65 Cal.2d 595, 600, *People* v. *Faris, supra,* 63 Cal.2d 541, 546, and *People* v. *Bilderbach, supra,* 62 Cal.2d 757, 768, is a fruit of the illegal search.

Howard's second confession is similarly fruit of the illegal search. The second confession was made the day after the first upon questioning by the police. As in *People* v. *Spencer, supra,* 66 Cal.2d 158, 168, there is no evidence that the causative link between the two confessions had been broken, the state has failed to meet its burden of showing such a break, and we must presume that the subsequent confession is the result of the same impropriety which induced the first confession.[3]

---

[3]In view of this conclusion it is unnecessary to determine whether the eliciting of the second confession from Howard by the police officers was unlawful conduct on the ground that he had been released on bail at the time of the confession. (Cf. *Massiah* v. *United States,* 377 U.S. 201, 204 et seq. [12 L.Ed.2d 246, 249, 84 S.Ct. 1199]; *People* v. *Dorado,* 62 Cal.2d 338, 345-346 [42 Cal.Rptr. 169, 398 P.2d 361].)

On the record before us it must be concluded that Johnson's confession was induced by the authorities' exploitation of Howard's second confession. The evidence in the instant case is uncontradicted that when arrested Johnson denied any involvement in the burglaries; that he was taken, while under arrest, to Howard, for the purpose of hearing Howard repeat his earlier confession; and that Johnson's confession followed "almost immediately in time" (*People* v. *Brommel, supra,* 56 Cal.2d 629, 634) his hearing Howard repeat the confession he had earlier given the police.

In face of the uncontradicted evidence that Johnson first denied any involvement in the burglary, it cannot be challenged that Johnson confessed only because, hearing Howard's confession, he too knew that the "secret [was] out for good." (*People* v. *Spencer, supra,* 66 Cal.2d 158, 167.) This is not a case where a defendant having learned of the seized evidence and of another's confession implicating him delayed several days before deciding to return to the police and voluntarily confess. Nor is it a case where there is any evidence of an independent motive to confess. Johnson confessed immediately after hearing Howard's confession and had denied any involvement until he heard Howard confess.

The *Miranda* warnings given to Howard and Johnson are not sufficient to show that the primary taint has been purged. The *Miranda* warnings advise a defendant of his rights to remain silent and to counsel. They do not advise him whether the evidence he is confronted with is unlawfully obtained or whether it will be admissible at trial.

There is little, if any reason, to assume that the *Miranda* warning neutralizes the inducement to confess furnished by the confrontation of the defendant with the illegally obtained evidence which shows his guilt and the futility of remaining silent. If *Miranda* warnings were held to insulate from the exclusionary rule confessions induced by unlawfully obtained evidence, the police would be encouraged to make illegal searches in the hope of obtaining confessions after *Miranda* warnings even though the actual evidence seized might later be found inadmissible. (Cf. *People* v. *Moore, supra,* 69 Cal.2d 674, 683-685; *People* v. *Bilderbach, supra,* 62 Cal.2d 757, 767.) To so hold would result in the *Miranda* warning— intended to protect the defendant's rights to counsel and to remain silent (*Miranda* v. *Arizona,* 384 U.S. 436, at p. 479 [16 L.Ed.2d 694, at p. 726, 86 S.Ct. 1602, 10 A.L.R.3d 974]) and to prevent exploitive police practice (*id.* at pp. 445-

457 [16 L.Ed.2d at pp. 707-713])—becoming the instrument of a bootstrap operation to insulate unlawful police activities from the effects of the exclusionary rule.

We cannot subscribe to such a suggestion. We recognize, of course, that *Miranda* did not purport to eliminate the use of confessions "given freely and voluntarily without any compelling influences." (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 478 [16 L.Ed.2d at p. 725].) We recognize, too, that the taint of illegal action in this context can be dissipated by an intervening act of defendant's free will (see *People* v. *Sesslin,* 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321]), and that the *Miranda* warning may be a factor to be considered with other evidence indicating that the defendant has acted independently of the unlawful inducement. However, the shield of *Miranda* should not become a sword to vitiate the keystone of the rule excluding illegally obtained evidence, namely, that "the prosecutor may not profit directly or indirectly from an illegal search." (*People* v. *Bilderbach, supra,* 62 Cal.2d 757, 763. See also *People* v. *Moore, supra,* 69 Cal.2d 674, 683-685.) ▮ Accordingly, although the *Miranda* warning may be a factor in determining whether there is an intervening act of free will, it does not in isolation demonstrate the requisite attenuation.

We have recently pointed out that warnings given in accordance with *People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354, "as an added safeguard to insure defendant's voluntary waiver of his constitutional rights, does not, in itself, preclude application of the *Wong Sun* exclusionary rule." (*People* v. *Sesslin, supra,* 68 Cal.2d 418, 429.) There is no reason to treat *Miranda* warnings differently.

The Attorney General's reliance on *People* v. *Stoner, supra,* 65 Cal.2d 595, is misplaced. Although the court, in excluding a confession as fruit of an unlawful search stated that defendant had "received no legal advice" and that defendant was at no time before his confession informed "that he had a right to remain silent" (*id.* at p. 600), *Stoner* made clear that the absence of a warning was only one factor of many in determining that the confession was inadmissible; *Stoner* is not authority for the proposition that a different result would have obtained if the defendant had received the proper warnings.

*People* v. *Martin,* 240 Cal.App.2d 653, 657 [49 Cal.Rptr. 888], also relied on by the Attorney General, involved a confession following an illegal arrest. In *Rogers* v. *Superior*

*Court,* 46 Cal.2d 3, 10 [291 P.2d 929], we found a basic distinction between evidence seized in violation of search and seizure provisions and voluntary statements made during an illegal detention. ''The voluntary admission is not a necessary product of the illegal detention; the evidence obtained by an illegal search or by a coerced confession is the necessary product of the search or of the coercion.''

The distinction in *Rogers* is similarly applicable to the effect of a *Miranda* warning on a confession obtained by confrontation with evidence secured by an unlawful search, and a confession following an illegal arrest. Cases where a confession follows an unlawful arrest, and those where the confession follows a confrontation of the defendant with illegally seized evidence are distinguishable. In the latter case, the illegality induces the confession by showing the suspect the futility of remaining silent. (See *People* v. *Spencer, supra,* 66 Cal.2d 158, 167 [''The secret is out for good.'']) Where, as in *Martin,* a confession follows a false arrest, the custodial environment is merely one factor (though a significant one) to be considered in determining whether the confession is inadmissible.

The other cases relied on by the Attorney General involved, like *Martin,* confessions resulting from illegal arrests rather than from a confrontation with illegally seized evidence.[4]

---

[4]*Commonwealth of Pennsylvania* v. *Maroney* (3d Cir. 1965) 348 F.2d 22, 29-30, is factually distinguishable, and makes clear that the standard, even in an unlawful arrest situation, is the proximity of the initial illegal custodial act to the procurement of the confession (there five days), and the intervention of other circumstances (petitioner spoke to an attorney). *United States* v. *Burke* (D. Mass. 1963) 215 F.Supp. 508, 511, cert. denied, 379 U.S. 849 [13 L.Ed.2d 52, 85 S.Ct. 91], merely states that *Wong Sun* does not hold that a person ''who is illegally arrested is thereby rendered legally incapable of making any voluntary admission. . . .'' but goes on to rule that the burden is on the prosecution to show that the admission is the product of an ''intervening independent act of the defendant's free will.'' *Collins* v. *Beto* (5th Cir. 1965) 348 F.2d 823, 828, 829, 830, in which the defendant's confession was *excluded,* does state that ''The best and perhaps the only way to [purge the taint of the unlawful arrest] would be to afford the suspect an effective opportunity to obtain the assistance of counsel. . . . Had he been effectively afforded the assistance of counsel before making his inculpatory statement, a different result might well be reached.'' But *Collins* neither suggests nor holds that the *Miranda* warning, in isolation, will dissipate the taint of prior unlawful activity, whether an unlawful arrest or an unlawful search. *Jacobs* v. *Warden, Maryland Penitentiary* (4th Cir. 1966) 367 F.2d 321, 323, also relied on by the Attorney General, does parallel the facts of our case in that the defendant's confession was secured after a codefendant's confession, but involves an illegal arrest.

*People* v. *Wheeler,* 243 Cal.App.2d 340 [52 Cal.Rptr. 508], did not purport to resolve the issue before us. In footnote 7 at page 347, the

■ We are satisfied that in the circumstances of the instant case the *Miranda* warnings given to Howard and Johnson cannot insulate from the unlawful search the confessions secured.

■ It is true that this court has held that a defendant has no standing to raise the legality of statements secured from another defendant in violation of *Miranda*. (*People* v. *Varnum,* 66 Cal.2d 808, 812-813 [59 Cal.Rptr. 108, 427 P.2d 772].) However, *Varnum* stated that the policies underlying the exclusionary rule based on the Fourth Amendment prohibition of unreasonable searches and seizures differ from the policies involved in the *Miranda* rule, which is based on the privilege against self-incrimination and the right to counsel protected by the Fifth and Sixth Amendments. This court then reaffirmed the view that in cases of unlawful searches and seizures a defendant has standing to object when his own rights were not violated because a contrary rule would seriously weaken the deterrent effect of the exclusionary rule. (66 Cal.2d at p. 812.) No substantial reason appears to require departure from the long settled rule applied in search and seizure cases (*People* v. *Martin,* 45 Cal.2d 755, 760-761 [290 P.2d 855]) and accordingly Johnson has standing to raise the lawfulness of the search and its products.

■ Since the Attorney General has conceded that the search was unlawful on the record before us, and since the undisputed evidence before us shows that the confessions were the fruit of that search, the confessions should have been excluded. Without the confessions, the evidence is insufficient to sustain the conviction, and the error in admitting the confessions must be deemed prejudicial and compels reversal.

However, it is possible that on remand further evidence on the issues of the lawfulness of the search or the relationship of the confessions to the search may be produced. Accordingly, we shall discuss two further questions which might arise in the event of a retrial.

The Attorney General urges that, where a defendant claims that his confession is an inadmissible fruit of an unlawful search, the burden is on the defendant to prove that the unlawful activity induced the confession.

---

court conjectured that ''It is conceivable that the entire problem has become academic by reason of *Miranda* . . . since it is certainly arguable that if a defendant makes an incriminating statement after the police have complied with [*Miranda*], the connection between the illegal arrest and the statement has become sufficiently 'attenuated as to dissipate the taint.' ''

▆▆▆ The Attorney General relies on *Nardone* v. *United States,* 308 U.S. 338 [84 L.Ed. 307, 60 S.Ct. 266]. *Nardone* does not support the rule urged. *Nardone* holds that once the defendant has established a relationship between the unlawful police activity and the evidence or confession to which objection is made, the burden is on the prosecution to show that the unlawful taint had been dissipated:

"The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wiretapping was unlawfully employed. Once that is established . . . the trial judge must give opportunity . . . to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. *This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin.*" (Italics added.)[5] (308 U.S. at p. 341 [84 L.Ed. at p. 311].)

*Nardone,* then, casts burdens on both the prosecution and the defense. The defendant must "prove that a substantial portion of the case against him was a fruit of the poisonous tree." Thus, the defendant must establish a relationship between the unlawful act and the objected-to evidence or confession. However, once he has done so the burden is then on the prosecution under *Nardone* to show that "its proof had an independent origin," (308 U.S. at p. 341 [84 L.Ed. at p. 311]), that the admission "is the product of an intervening independent act of the defendant's free will," (*United States* v. *Burke, supra,* 215 F.Supp. 508, 511; see, *People* v. *Sesslin, supra,* 68 Cal.2d 418, 428) or that the admission was obtained from an "independent source" (*Wong Sun* v. *United States, supra,* 371 U.S. 471, 487 [9 L.Ed.2d 441, 455, 83 S.Ct. 407]).[6]

---

[5]*People* v. *La Peluso,* 239 Cal.App.2d 715, 726 [49 Cal.Rptr. 85], cert. denied, 385 U.S. 829 [17 L.Ed.2d 65, 87 S.Ct. 64], which purports to rely on *Nardone,* in fact reverses the language of *Nardone,* in stating, ". . . if it be assumed that defendant . . . may assert that the evidence in the room must be excluded as the product of statements improperly elicited from the declarant he must show further that there were no independent guidelines to the discovery of this evidence." *La Peluso* is, therefore, inconsistent with *Nardone* and is disapproved.

[6]It has been suggested that the defendant is in the best position to prove what his motive was in confessing. (See Maguire, *How To Unpoison The Fruit—The Fourth Amendment and the Exclusionary Rule* (1964) 55 J.Crim.L., C. & P.S. 307, 321, but see Pitler, "*The Fruit of the Poisonous Tree" Revisited and Shepardized* (1968) 56 Cal.L.Rev. 579, 607-609.) However, *Nardone* does not purport to require the prosecution to read minds, any more than does the burden of proof rule established in *People* v. *Spencer, supra,* 66 Cal.2d 158, 168, concerning the "causative link" between two confessions. The rule requires the presentation of objective evidence.

Placing the burden upon the prosecution to show that the connection between the search and the statement has become so attenuated as to dissipate the taint is consistent with the presumptions governing situations in which an inadmissible confession is followed by another confession. As we have seen, it is established that in such situations there is a presumption that the second confession is the fruit of the first and that the prosecution has the burden of showing that the later confession is untainted. (*People* v. *Arnold, supra,* 66 Cal.2d 438, 450; *People* v. *Spencer, supra,* 66 Cal.2d 158, 168; *People* v. *Brommel, supra,* 56 Cal.2d 629, 634; *People* v. *Boles,* 221 Cal.App.2d 455, 459 [34 Cal.Rptr. 528].)[7]

The Attorney General relies on language in *Fahy* v. *Connecticut, supra,* 375 U.S. 85, but that case, when properly analyzed, provides no support for his position. In *Fahy* the court stated: "Thus petitioner should have had a chance to show that his admissions were induced by being confronted with the illegally seized evidence." (375 U.S. at p. 91 [11 L.E.2d at p. 175].) Even assuming that such language might be read to suggest a different burden of proof than does *Nardone,* first, *Fahy* was concerned, not with burden of proof, but with the fact that the defendants "were not allowed to pursue the illegal search and seizure inquiry at trial" (*id.* at p. 90 [11 L.Ed.2d at p. 175]) and the prejudicial effect of this denial. Second, *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824], explicitly clarified *Fahy* and clearly established the standard of review for constitutional errors:

"There is little, if any, difference between our statement in *Fahy* v. *Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

---

[7]Although our court has not been confronted with the precise question, federal courts have held that where an unlawful *arrest* is followed by a confession, the burden is on the prosecution to show that the illegal taint has been dissipated. (*Collins* v. *Beto, supra,* 348 F.2d 823, 827; *United States* v. *Burke, supra,* 215 F.Supp. 508, 511. See also, *Commonwealth* v. *Bishop* (1967) 425 Pa. 175, 183 [228 A.2d 661].)

It is true that *Fahy* and *Chapman* dealt with defining harmless error, rather than with establishing burden of proof. But the import is clear: it is presumed that the error was not harmless—that the deprivation of constitutional rights was exploited by the prosecution—unless the prosecution can show the contrary, beyond a reasonable doubt. That the ''harmless error'' doctrine is thus directly related to the burden of proof doctrine is made clear by *People* v. *Spencer, supra,* 66 Cal.2d 158, 168, which, in concluding that a second otherwise admissible confession was induced by a prior inadmissible confession, stated: ''. . . the State bears the burden of showing that the causative link between the two confessions had been broken. '[T]he beneficiary of a constitutional error [must] prove *beyond a reasonable doubt* that the error complained of did not contribute to the verdict obtained.' '' (Citing *Chapman.*)

Johnson contends that the requirements of *Miranda* were not complied with. He points out that he was not specifically offered the immediate services of counsel but only told of his right to counsel and that he did not expressly waive his right to counsel.

Without explicitly answering the question raised, a substantial number of cases have found a waiver where the evidence shows that the police have stated the four-pronged *Miranda* warning without offering to immediately secure counsel, that they asked the defendant if he understands those rights, that the defendant has responded affirmatively, and that the defendant without expressly stating that he has waived counsel proceeds to make damaging statements. (See *People* v. *Thomas,* 65 Cal.2d 698, 704-705 [56 Cal.Rptr. 305, 423 P.2d 233]; *People* v. *Saterfield,* 65 Cal.2d 752, 755 [56 Cal.Rptr. 338, 423 P.2d 266]; *People* v. *Shaw,* 267 Cal.App.2d 679, 683-684 [73 Cal.Rptr. 499]; *People* v. *Samaniego,* 263 Cal.App.2d 804, 810 [69 Cal.Rptr. 904]; *People* v. *Roman,* 256 Cal.App.2d 656, 659 [64 Cal.Rptr. 268]; *People* v. *Rodriguez,* 256 Cal.App.2d 663, 668 [64 Cal.Rptr. 253]; *People* v. *Sainz,* 253 Cal.App.2d 496, 501 [61 Cal.Rptr. 196].)

The Court of Appeal in *People* v. *Salcido,* 246 Cal.App.2d 450, 454-455 [54 Cal.Rptr. 820], specifically held that a defendant need not expressly state that he does not wish counsel before a proper waiver can be found. *Salcido* points out that the cases hold that waiver cannot be shown from a silent record. a record which does not show that defendant was informed of his rights. (See *People* v. *Brooks,* 64 Cal.2d

130, 135 [48 Cal.Rptr. 879, 410 P.2d 383] [record did not show that defendant informed of rights; no waiver]; *People* v. *Furnish,* 63 Cal.2d 511, 517 [47 Cal.Rptr. 387, 407 P.2d 299] [same]; *People* v. *Lilliock,* 62 Cal.2d 618, 622 [43 Cal. Rptr. 699, 401 P.2d 4] [same]; compare *In re Johnson,* 62 Cal.2d 325, 333-334 [42 Cal.Rptr. 228, 398 P.2d 420] [mere response of "guilty" at trial not sufficient to show intelligent and understanding waiver of right to counsel]; *In re Woods,* 64 Cal.2d 3, 7-8 [48 Cal.Rptr. 689, 409 P.2d 913] [same].) Similarly, *People* v. *Samaniego, supra,* 263 Cal.App.2d 804, 810, held that waiver may be found without express words of waiver. Although *People* v. *Matthews,* 264 Cal.App.2d 557, 568, 569 [70 Cal.Rptr. 756], emphasizes the importance of an "affirmative waiver," no particular form of waiver is suggested; also, the defendant specifically stated that he did *not* understand his rights. (*Id.* at p. 561.)

Several cases from other jurisdictions have held that compliance with *Miranda* requires express words of waiver. (*Sullins* v. *United States* (10th Cir. 1968) 389 F.2d 985, 988 [defendant must specifically waive right to counsel]; but see, *Bond* v. *United States* (10th Cir. 1968) 397 F.2d 162, 165 [citing dissent in *Sullins,* no specific waiver required]. See also *People* v. *Anonymous* (1968) 58 Misc.2d 13 [294 N.Y.S.2d 248, 252] [defendant's response that "he *understands* the *Miranda* advices" not sufficient compliance]; cf. *Atwell* v. *United States* (5th Cir. 1968) 398 F.2d 507, 510 [advice that defendant could consult with counsel "at anytime" not sufficient compliance].) We recognize, too, that certain California statutes specify that a defendant expressly waive counsel. (E.g., Pen. Code, § 859 [examination by committing magistrate]; § 987 [arraignment]; § 1018 [guilty plea].) But California's statutory requirements when a defendant is brought before a court neither compel nor even suggest that the Supreme Court in establishing guidelines for police interrogation intended that a defendant prior to questioning must be similarly examined to determine waiver.

 We disagree with the authorities cited by defendant, and find the better rule to be that stated in *United States* v. *Hayes* (4th Cir. 1967) 385 F.2d 375 377-378: ". . . [W]e cannot accept appellant's suggestion that because he did not make a statement—written or oral—that he fully understood and voluntarily waived his rights after admittedly receiving the appropriate warnings, his subsequent answers were auto-

matically rendered inadmissible. Of course, the attendant facts must show clearly and convincingly that he did relinquish his constitutional rights knowingly, intelligently, and voluntarily, but a statement by the defendant to that effect is not an essential link in the chain of proof. On the other hand, mere silence of the accused followed by grudging responses to leading questions will be entitled to very little probative value in light of the inherently coercive atmosphere of in-custody interrogation. The government will have to prove more."

Once the defendant has been informed of his rights, and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them.

The judgment is reversed.

Traynor, C. J., Tobriner, J., and Sullivan, J., concurred.

MOSK, J.—I dissent.

In the style of *Jacula Prudentum*[1] the majority in this case extend almost ad infinitum the "fruit of the poisonous tree" doctrine: the law enforcement officers unlawfully broke into the premises occupied by one Ciabattari; because they broke in unlawfully the arrest of Ciabattari was unlawful; because the arrest of Ciabattari was unlawful, the seizure of the stolen television set was unlawful; because the seizure of the set was unlawful, the arrest of Howard was unlawful; because the arrest of Howard was unlawful, the confession of Howard was unlawful; because Howard's confession was unlawful, the arrest of Johnson was unlawful; because the arrest of Johnson was unlawful, the confession of Johnson was unlawful. The majority reap a prolific harvest of fruit from a tainted tree.

This beguiling rationale is superficially appealing because of its facile approach to an intricate problem; it reduces to a computer formula the dull, methodical, undramatic efforts of law enforcement officers to solve a series of major burglaries and to apprehend and convict the burglars. But, as Judge Edgerton observed long ago, causation for legal purposes is too elusive and complex for explicit formulation. (Edgerton,

---

[1] George Herbert, *Jacula Prudentum*: "For want of a nail the shoe is lost, for want of a shoe the horse is lost, for want of a horse the rider is lost." Benjamin Franklin in his *Poor Richard* (1758) extended the roots of that poisonous tree: ". . . for the want of a rider the battle was lost, for the want of a battle the kingdom was lost. . . ."

*Legal Cause* (1924) 72 U.Pa.L.Rev. 211.) Here the fallacy in the majority thesis lies in its consideration of a multiplicity of episodes as if it were a unitary event.

I would treat the facts as comprising at least six severable incidents. In so doing, I find only one unlawful act committed by peace officers out of the series of relatively independent acts.

The officers went to Howard's premises, seeking Howard. This was a lawful act.

Ciabattari answered the door and the officers without benefit of process or probable cause forcefully entered the premises he was then occupying, arrested him and seized a television set, which was in plain sight and which they identified as having been taken in one of the burglaries. This was unlawful.

Howard was arrested two hours later at an entirely different site. This was a lawful act.

At the sheriff's station, the television set was pointed out to Howard, he was given adequate *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) warnings, and he voluntarily confessed. As will be discussed, the confession after admonitions required by *Miranda* were given was lawful.

Howard, in his valid confession, implicated Johnson. A day later officers arrested Johnson. This was lawful.[2]

Howard and Johnson were brought together by the officers. Both were given *Miranda* warnings, Howard for the second time. Johnson then confessed. This was lawful.

The expression "fruit of the poisonous tree" first appeared in Justice Frankfurter's opinion in *Nardone* v. *United States* (1939) 308 U.S. 338, 341 [84 L.Ed. 307, 311. 60 S.Ct. 266]. In enunciating that doctrine he pointed out, "Sophisticated argument may prove a causal connection between information obtained through illicit [activity] and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint."

Some years later the Supreme Court again made it abundantly clear in *Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407], that "not . . .

---

[2]See *Smith and Bowden* v. *United States* (D.C.Cir. 1963) 324 F.2d 879 [117 App.D.C. 1], in which the court said: "Courts have gone a long way in suppressing evidence but no case as yet has held that a jury should be denied the testimony of any eyewitness to a crime because of the circumstances in which his existence and identity was learned." (*Id.* at p. 881.)

all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' '' In other words, while *Wong Sun* provided a confession is presumptively tainted if generated by illegal activity, the presumption may be overcome and in that sense the taint is defeasible.

The majority of this court in *People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321], described what is necessary to constitute the attenuation mentioned in *Nardone* and in *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 766 [44 Cal.Rptr. 313, 401 P.2d 921], in this manner: ''That degree of 'attenuation' which suffices to remove the taint from evidence obtained directly as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained 'by exploitation of that illegality.' Consent by the defendant, if 'sufficiently an act of free will to purge the primary taint of the unlawful [arrest]' (*Wong Sun* v. *United States, supra,* 371 U.S. at p. 486 [19 L.Ed.2d at p. 454]), may produce the requisite degree of 'attenuation.' ''

It is significant that the majority here misread and further constrict *Sesslin* by limiting the required attenuation to an intervening act of defendant (*ante,* pp. 551, 554), whereas *Sesslin* (68 Cal.2d at p. 428) requires merely an independent act by defendant *or a third party*. By the simple expedient of eliminating the italicized clause, the majority are able to unreasonably expand the fruit of the poisonous tree doctrine, and to exclude from consideration as an intervening act the admonitions given by the police officers.[3]

---

[3] I find a marked similarity between the theory of the majority and the novel ''tainted witness'' doctrine. (See Ruffin, *Out on a Limb of the Poisonous Tree: the Tainted Witness* (1967) 15 U.C.L.A. L.Rev. 32.) Here the Johnson *evidence* was clearly not tainted; the majority appear to hold the *witness,* Howard, to have become tainted. Thus a human witness is treated analogously to inanimate evidence. While Ruffin proposed this unique theory, he himself conceded that the ''argument that leads from improper interrogation may taint the discovered witness or his testimony has not been so favorably received.'' (*Id.* at p. 44.)

As a result, the majority treat *Miranda* altogether too cavalierly, as if the required admonitions are a mere trivial incident in the process of law enforcement. Yet *Miranda* has been generally interpreted as being of such paramount significance that it is alone "calculated to raise the standard of law enforcement in this country."[4] When the specified warnings are given by police authorities, the "third party" referred to in *Sesslin,* there is a clear, distinguishable break in the proceedings. (*People* v. *Stoner* (1967) 65 Cal.2d 595, 600 [55 Cal.Rptr. 897, 422 P.2d 585] ; *People* v. *Martin* (1966) 240 Cal.App.2d 653, 656-657 [49 Cal.Rptr. 888].) A reviewing court can—and should—analyze what happened before the admonition, and what happened after. When the majority blithely dismiss the advice on constitutional rights as constituting no intervening change in circumstances, they denigrate the value and importance of *Miranda* in our emerging law of criminal practice and procedure.

I can conceive of few more "independent act[s] by the defendant or a third party which breaks the causal chain linking the illegality and [the] evidence" than advice by the captors to the suspect that he has a right to have counsel then and there, and that he may remain silent. Here we have *Miranda* warnings serving as the attenuation required by *Nardone, Wong Sun, Bilderbach* and *Sesslin* not once, but twice. There was not merely a single break in the causal chain, but a double fracture.

First, the suspect Howard was given proper warnings at the stationhouse. He waived his constitutional rights and confessed. It is unreasonably tenuous to attempt to relate this voluntary confession back to the earlier invasion of the premises occupied by an entirely different individual. As the court said in *Jacobs* v. *Warden, Maryland Penitentiary* (4th Cir. 1966) 367 F.2d 321, 323 ,"The fruit-of-the-poisonous-tree doctrine need not be extended to its seedlings."

If that break in the causal chain is not adequate, though I deem it to be, still another *Miranda* admonition was given to Howard and to this defendant, Johnson, when they were together. Only thereafter did Johnson voluntarily confess.

After an initial error in breaking in on Ciabattari, the law enforcement officers here scrupulously adhered to the letter of *Miranda* in dealing with Howard and Johnson. They do not

[4]Goldstein, *Miranda* v. *Arizona: a Reply to a Senator* (1967) 5 Am. Crim.L.Q. 173.

need the therapeutic device of excluding confessions to deter future impropriety.

I would affirm the judgment.

McComb, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied April 2, 1969. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.