NIMMONS, Judge,
concurring in part and dissenting in part.
I agree with the majority that the trial court’s order suppressing the statements should be affirmed, but I disagree with the majority’s affirmance of the (c)(4) dismissal order.
THE (C)(4) MOTION
I do not agree with the majority that the defendant was entitled to a dismissal under Fla.R.Cr.P. 3.190(c)(4). Essentially, our af-firmance of the dismissal order in this case encourages (c)(4) “mini-trials” in cases which involve disputes over the inferences which may be drawn from the purported “undisputed” facts. Adequacy of the proof of a defendant’s constructive possession of contraband can, in the totality of all the circumstances, easily turn upon seemingly insignificant factual nuances. For example, in this case, the defendant’s peculiar conduct when he encountered the officers in the woods on his property is not, in my view, insignificant. Here, we have law enforcement officers who were diligently in *437 hot pursuit of a dangerous escapee and who, nevertheless, were told by the defendant: “I want you off my property now.” The officers eventually talked the defendant into cooperating although he attempted to head back in the direction the officers were proceeding (towards the defendant’s mobile home). There was also a “dim road” from that point back through the woods approximately 600 yards to the area where the mobile home was situated. One could certainly infer that the defendant had something on his property which he did not want the officers to see. That inference, along with the other facts set forth in the majority’s opinion, particularly footnote 2 thereof, are such that the trial court should not have granted the motion to dismiss.[1]
I am concerned that Rule 3.190(c)(4) is increasingly being used to short-circuit trials in situations in which it was never intended to be used. And I share the Fifth District’s view:
So long as the state barely shows a case against the accused it should be allowed to proceed with its case. Then if the accused is entitled to a directed verdict at trial or on acquittal, each party has been given its due. It is only when the state cannot establish even the barest bit of a prima facie case that it should be prevented from prosecuting.
State v. Pentecost, 397 So.2d 711, 712 (Fla. 5th DCA 1981). See also State v. Hunwick, 446 So.2d 214 (Fla. 4th DCA 1984).
ADMISSIBILITY OF STATEMENTS
On this issue, I write only to clarify my views as to the reasons why the trial court’s order granting the defendant’s motion to suppress statements must be affirmed.
The state points to the fact that the defendant, upon being handcuffed and placed in the deputy sheriff’s ear, was properly given the Miranda warnings. There is a dearth of any evidence, however, that the defendant ever waived his constitutional rights including his right to remain silent. The state, of course, has the burden of proving such waiver and, although a finding of waiver is not dependent upon an express formalistic waiver or the utterance by the defendant of a shibboleth such as: “I hereby waive my rights,” or “I, nevertheless, wish to make a statement,” the state must present evidence from which it can be determined that the defendant knowingly and voluntarily waived his rights before being questioned.
The state urges the principle that once a defendant has been informed of his rights and indicates that he understands those rights, his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and voluntarily chooses not to exercise them, citing United States v. Hayes, 385 F.2d 375 (4th Cir.1967), cert. denied 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968), and People v. Johnson, 70 Cal.2d 541, 75 Cal.Rptr. 401, 450 P.2d 865 (1969). I do not disagree with that principle and believe that waiver can be found under those circumstances. However, in the instant case, there is no evidence that the defendant understood his rights. In fact, no evidence was presented that he was ever even asked if he understood his rights.
In Tague v. Louisiana, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980), the Supreme Court stated:
Miranda v. Arizona clearly stated the principles that govern once the required warnings have been given.
“If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, n. *438 14, [84 S.Ct. 1758, 1764, 12 L.Ed.2d 977, 4 Ohio Misc. 197, 32 Ohio Ops.2d 31]. This Court has always set high standards of proof for the waiver of constitutional rights. Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357] (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.” 384 U.S. [436] at 475, [86 S.Ct. 1602 at 1628], 16 L.Ed.2d 694, 10 Ohio Misc. 9, 36 Ohio Ops.2d 237, 10 A.L. R.3d 974.
Just last Term, in holding that a waiver of Miranda rights need not be explicit but may be inferred from the actions and words of a person interrogated, we firmly reiterated that
“[t]he courts must presume that a defendant did not waive his rights; the prosecution’s burden is great....” North Carolina v. Butler, 441 U.S. 369, 373 [99 S.Ct. 1755, 1757], 60 L.Ed.2d 286 (1979).
In this case no evidence at all was introduced to prove that petitioner knowingly and intelligently waived his rights before making the inculpatory statement. The statement was therefore inadmissible.
444 U.S. at 470, 471, 100 S.Ct. at 652, 653. The Court’s opinion in Miranda also said:
“[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was eventually obtained.”
384 U.S. at 475, 86 S.Ct. at 1628. See also North Carolina v. Butler, supra.
Finally, I wish to address that portion of our opinion which appears to emphasize the fact that, after being given his warnings, the defendant “remained silent during his detention until he was transferred to the car of Lt. Nobles.” I do not construe that language of our opinion to suggest that the defendant was exhibiting an intention to exercise his Fifth Amendment privilege in the sense contemplated in the following portion of the Court’s opinion in Miranda:
If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.
384 U.S. at 473, 86 S.Ct. at 1627. In other words, the fact that the defendant said nothing for a period of time after being advised of his rights — and, of course, nothing was then being said to him at that time either — would not have precluded the officers from proceeding to subsequently interview him if, prior thereto, the defendant had indicated an intention to waive his right to remain silent. Stated another way, the defendant’s motion to suppress under the circumstances of this case is not dependent upon a showing that the defendant’s silence during the above interval was the kind of affirmative exercise of the defendant’s constitutional rights as described in the above-quoted portion of Miranda. Rather, the defense was entitled to prevail on its motion simply because the state failed to carry its burden of proving the threshold element of waiver. Certainly, Lt. Noble’s subsequent encounter with the defendant and the latter’s response to his questions, as described in the court’s opinion, did not establish waiver, there being no evidence from which it could be found that the defendant understood his rights.
The question of the admissibility of a statement or confession is for the court to decide, based on all the surrounding cir *439 cumstances, DeConingh v. State, 433 So.2d 501 (Fla.1983); Palmes v. State, 397 So.2d 648 (Fla.1981), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981), and a trial court’s ruling thereon comes to a reviewing court with the same presumption of correctness that attaches to jury verdicts and final judgments. DeConingh v. State, supra; Gaspard v. State, 387 So.2d 1016 (Fla. 1st DCA 1980). The reviewing court should defer to the factfinding authority of the trial court and should not substitute its judgment for that of the trial court. DeConingh v. State, supra; State v. Melendez, 392 So.2d 587 (Fla. 4th DCA 1981). Measured by these standards, the state has failed to demonstrate that the trial court erred in its determination that, prior to the incriminating statements, the defendant did not freely and voluntarily waive his rights to remain silent and to counsel.
I would, therefore, affirm the order granting the motion to suppress but reverse the order granting the (c)(4) motion to dismiss.

. On the (c)(4) issue, the state’s arguments are predicated upon the assumption that the defendant's inculpatory statements will be admissible. The state has made no effort to present an argument which assumes the inadmissibility of such statements. Accordingly, the state’s briefing on this issue has been of limited assistance to the court.